# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BLIA LEE,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>MICHAEL J. ASTRUE, Commissioner<br>of Social Security,<br><br>　　　　　　Defendant. | 1:08-cv-01505 GSA<br><br>ORDER REGARDING PLAINTIFF'S<br>SOCIAL SECURITY COMPLAINT |

## **BACKGROUND**

Plaintiff Blia Lee ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for supplemental security income pursuant to Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Gary S. Austin, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. On October 31, 2008, the action was reassigned to the Honorable Gary S. Austin for all purposes.

1

## **FACTS AND PRIOR PROCEEDINGS**[2]

Plaintiff filed his application on or about January 25, 2005, alleging disability beginning in 1998 due to back pain and foot pain. AR 133-136, 144. His application was denied initially and on reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 90-95, 97-101. ALJ Stephen W. Webster held a hearing on May 16, 2007, and issued an order denying benefits on July 20, 2007. AR 107-114. On December 11, 2007, the Appeals Council vacated the decision and remanded for further proceedings related to Plaintiff's mental impairment. AR 117-118. Thereafter, on March 14, 2008, the ALJ conducted a second hearing. Plaintiff appeared and testified with the assistance of an interpreter and was represented by counsel. AR 53-72. On April 3, 2008, ALJ Webster issued an order denying benefits. AR 18-26. On July 10, 2008, the Appeals Council denied review. AR 9-11.

**2008 Hearing Testimony**

ALJ Webster held a hearing on March 14, 2008, in Fresno, California. Plaintiff appeared and testified with the assistance of a Hmong interpreter. Plaintiff was represented by attorney Melissa Proudian. Vocational Expert ("VE") Thomas Dachelet also testified. AR 53-72.

Plaintiff did not know his age at the time of the hearing, but admitted his birthday was December 31, 1958, when asked by counsel. AR 56. He indicated he is five feet, three inches tall, and weighs about 149 pounds. AR 56.

While Plaintiff has a valid driver's license, he does not drive when he is ill and consequently drives about twice a year. AR 57. Plaintiff has no formal education, except for "some adult school." He cannot read or write English, but he knows a few words in English, noting that if he is "real hungry [he] can beg for food." AR 57. Plaintiff can read and write in Hmong. AR 57-58.

Plaintiff has not worked since his application in January 2005, and in fact has not worked at all in the past fifteen years. He lives in Fresno with his wife and two children who are in seventh and eighth grade, respectively. His wife's older son and his spouse, as well as their four

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

children, also live in the home. Plaintiff's family receives welfare and food stamp assistance. AR 56, 58-60, 66.

Plaintiff is unable to work any job eight hours a day, five days a week, because he is unable to sit and stand, and suffers from depression and memory problems. More specifically, his low back pain travels to his feet and up to his buttocks so that he cannot sit. He also has neck pain that travels into his head, causing headaches. Plaintiff also suffers from stomach problems that he believes are related to his gall bladder. AR 60.

Plaintiff is treated by "Dr. Calika"[3] and Dr. Nital, a gastroenterologist. His back pain is treated by Dr. Chung, a chiropractor. The medications prescribed by Dr. Kaleka work for a few hours, but then the pain returns. AR 61. When asked about any side effects of the medication, Plaintiff replied that the medication makes his body "sensitive to things" and it feels "like something is crawling all over" his body. AR 61-62. Plaintiff's back pain affects his ability to function because he cannot bend down to pick something up, nor reach high or turn to the side. The low back pain affects reaching on both his left and right arm. AR 62. Other than seeing Dr. Kaleka and the chiropractor, Plaintiff indicated he does not receive additional treatment for his back pain. AR 63. With regard to Plaintiff's foot pain, it is constant. The medication helps by numbing the pain. AR 63-64.

Plaintiff believes his depression is linked to his pain. It affects his ability to function because he "cannot perform the task" and gets angry and frustrated. He cannot concentrate on simple tasks such as passing a message on to another person because when he turns to do so he has forgotten the message. AR 64. When asked to identify the longest period of time that he could focus on an activity, Plaintiff responded "[m]aybe one minute." Afterward, he would get frustrated and "probably throw or smash" something. AR 64-65. Plaintiff does not generally finish a project. He indicated that he gets along well with others. He AR 65.

Plaintiff can sit "straight" for five to ten minutes before he experiences "burning pain." He also assessed a five to ten minute period with regard to his ability to stand. AR 62. He can

---

[3] This spelling appears in the hearing transcript, however, a review of the medical record reveals the doctor's surname is "Kaleka," and thus will be referenced accordingly.

walk for ten yards before he would need to rest.  AR 62-63.  With regard to the amount of time he lies down during the day, Plaintiff indicated it is "the whole day" because he is constantly changing positions.  AR 65.

When asked how much weight he could lift and carry, Plaintiff replied that he could hold a piece of paper "for a little bit," but it would eventually fall from his hand without his knowledge.  Asked about the weight of the bag he was carrying at the time of the hearing, Plaintiff replied that it weighed more than a piece of paper but less than ten pounds.  AR 63.

With regard to personal hygiene, Plaintiff indicated he can dress himself when he is not depressed otherwise he tears his clothing.  AR 65.  He can bathe himself and use the microwave to cook a simple meal.  AR 66.  He does not help with cleaning the house because he gets angry and wants to smash things; he does not do his own laundry.  AR 66.  Plaintiff denied any problem with alcohol or illegal drugs.  AR 66.

Plaintiff does not watch television, go to the movies, or read for entertainment.  He does not work in the yard, nor does he take care of his grandchildren because he cannot take care of himself.  AR 67.  He occasionally visits with friends or family.  He does not attend church because he cannot sit long enough.  AR 67.  Asked how he spends his day, Plaintiff indicated he spends the whole day shifting his position due to the pain.  AR 67.  He will lie down for a bit, walk for a bit, sit down, then lie down and rest, and repeat the process throughout the day.  AR 67-68.

VE Dachelet was asked to consider hypothetical questions posed by the ALJ.  First, the VE was asked to assume a hypothetical worker of Plaintiff's age, education and work history, with the ability to lift and carry fifty pounds occasionally and twenty-five pounds frequently, with the ability to stand, walk and sit for six hours in an eight-hour work day, who can perform simple, routine, one and two-step tasks.  AR 68.  The VE opined that such an individual would be able to perform sedentary, light and medium work in the regional or national economy.  Three examples of available medium work included: packager, DOT 920.587-134, with 16,202 available jobs in California and ten times that many in the nation; line service attendant, DOT

4

912.687-010, with 55,880 available jobs in California; and cleaner III, DOT 911.687-014, with 25,369 jobs in California, and 666,000 jobs available in the national economy. AR 68-69.

Next, the VE was asked to consider the same hypothetical individual, who was unable to complete an eight-hour work day or forty-hour work week. The VE indicated such a worker would be unable to perform any work in the national economy. AR 70.

**Medical Record**

The entire medical record was reviewed by the Court. A summary of the reports and treatment notes is provided below.

*V. S. Kaleka, M.D.*

Plaintiff was treated by Dr. Kaleka from March 16, 2005, through January 9, 2008. Back pain, leg pain, anxiety and depression are all reflected in the progress notes. AR 427-453, 481-488.

*Chiropractic Treatment*

Treatment notes from Good Chiropractic Care indicate Plaintiff was treated from September through December 2003. AR 397-409, 413-426.

Plaintiff was treated at Universal Chiropractic Care between October 2005 and March 2007. AR 454-462.

From August 2007 through February 2008, Plaintiff was treated at Effective Chiropractic Care. AR 473-479.

*Fresno Imaging Center*

X-rays of the cervical and lumbar spine, and left ribs, taken September 5, 2003, revealed mild degenerative changes in the cervical spine series; the lumbosacral spine series and left ribs series were unremarkable. AR 410-412.

*Chin Savanapridi, M.D.*

Treatment notes covering a period between 1998 and 2005 reveal Plaintiff's chief complaints were primarily low back pain, depression, and headaches. Generally, physical examination results included low back tenderness and tenderness in the heels of Plaintiff's feet,

and notations regarding plantar fascia in both feet.  Numerous medications were prescribed, including Naprosyn, Paxil, Tylenol, Toradol and others.  AR 189-203, 205-207.

### *Robert N. Wells, M.D.*

Following referral by Dr. Savanapridi, Dr. Wells performed a evaluation of Plaintiff's vision on August 19, 1997.  The doctor opined Plaintiff suffered from macular retinal degeneration of an uncertain etiology, although he did not believe ocular therapy was necessary because the condition was permanent and stationary.  AR 204.

### *Fresno County Mental Health*

All records have been reviewed (AR 218-258, 306-394, 463-471), however, for the sake of brevity, a sampling of progress notes and other reports are included in the Court's summary as follows.

A comprehensive assessment dated February 17, 2005, completed by Doan T. Truong, MSW/UMHC, included Plaintiff's chief complaints of depression, sleeplessness, nightmares, intrusive memories, body pain, and headaches.  Plaintiff reported depression dating back to 1998 caused by health problems, and a then-current worry regarding his ill, elderly mother in Laos.  He denied a past psychiatric history.  AR 253.  His general appearance, behavior, speech and ability to relate to the examiner were within normal limits; his mood was depressed and worried and his affect was constricted.  AR 255.  Plaintiff was oriented in all spheres, and denied auditory or visual hallucinations.  His thought flow and content were normal, memory was intact or fair, and judgment was good.  AR256.  Diagnoses included major depressive disorder, single episode, moderate; and post traumatic stress disorder.  AR 257.

A progress note dated May 18, 2005, prepared by Wen Liang Chu, M.D., indicates Plaintiff did not believe the medications prescribed lasted long enough.  Plaintiff's linear thought process was adequate and he did not suffer from delusion, he was depressed and his affect was within normal range.  The dosage of Plaintiff's Prozac prescription was increased.  AR 229.

On July 11, 2005, Plaintiff appeared for an appointment exhibiting poor hygiene.  He reported his back pain affected his daily functioning because he was depressed and angry, and

was ashamed. He preferred to remain inside his home. Plaintiff was to continue weekly therapy. AR 219.

A progress note dated July 19, 2005, prepared by Dr. Chu indicates Plaintiff was feeling "less depressed" and was taking prescribed medications. AR 218.

In a progress report dated January 29, 2007, Dr. Chu reported Plaintiff benefitted from the Prozac prescribed. Objective findings included cooperative behavior, normal speech, orientation, thought content, mood and affect. Thought process was organized. AR 313. Similar findings were reported in April 2007. AR 466.

### *Tahir Hassan, M.D./Valley Health Resources*

In an internal medicine evaluation dated February 27, 2005, Dr. Hassan, board certified in internal medicine, noted Plaintiff's chief complaints of hypertension, depression, back pain, bilateral foot pain, headaches and stomach ulcer. AR 208. Dr. Hassan's physical examination noted a well-oriented, Hmong male in no distress, exhibiting poor personal hygiene. AR 210. Grip strength was 25-25-25 on the right and 20-20-20 on the left. Visual acuity without glasses was 20/25 in both eyes. Range of motion in the neck was within normal limits, heart tones were of good quality and there was no tenderness in the chest. The abdomen was not tender. The back was not tender to palpitation in the midline or paraspinal areas. Straight leg raising was negative at ninety degrees. Range of motion in the back was within normal limits. AR 210-211. Upper and lower extremity testing revealed range of motion all within normal limits. AR 211-212. Hand grip was normal and finger approximation was intact. AR 211. Strength was 5/5 in all extremities, reflexes and pulses were normal, and gait was normal. AR 212. Dr. Hassan's diagnostic impressions included: hypertension, controlled; history of depression; back and leg pain, possibly secondary to degenerative joint disease; occasional headaches, stable; history of stomach ulcer, stable; and occasional chest pain, probably atypical, non-cardiac. AR 212. Dr. Hassan found Plaintiff could lift and carry fifty pounds occasionally and twenty-five pounds frequently, could stand and walk six hours in an eight-hour day with normal breaks, did not require an assistive device when walking, could sit for six hours in an eight-hour day with normal breaks, had no manipulative, visual, communicative or environmental limitations, with postural

limitations of occasional climbing, balancing, stooping, kneeling, crouching and crawling. AR 213.

### *Ekram Michiel, M.D./Valley Health Resources*

In a report dated June 11, 2005, Dr. Ekram Michiel, a board certified psychiatrist, completed a psychiatric evaluation of Plaintiff. AR 214-216. Plaintiff complained of being depressed following the sudden onset of back and foot pain, headaches and chest pain. Plaintiff stated he was unable to sleep because of the pain, was fatigued, felt useless and became easily angered and frustrated. He indicated he had never been hospitalized for a psychiatric illness, but was followed by a psychiatrist at Fresno County Mental Health. AR 214.

Plaintiff reported he was able to take care of his personal hygiene, shop with family, drive a car, and go to the park once or twice a year, but was unable to help with household chores or cook. AR 215.

With regard to mental status, Dr. Michiel indicated Plaintiff maintained good eye contact and exhibited normal speech and body language. AR 215. He was oriented to place and could recall three of three objects after one minute and five minutes. AR 215. Plaintiff correctly answered a simple mathematical calculation, but could not explain the similarity between an apple and an orange. AR 215. Plaintiff's mood was depressed and his affect was restricted and sad; he denied suicidal or homicidal ideations. AR 215. Plaintiff's thought process was goal-directed, content was normal, and he did not suffer from any auditory, visual or tactile hallucinations or delusions. AR 215-216.

Dr. Michiel diagnosed depressive disorder, not otherwise specified. He noted a history of low back pain and a stressor related to the health condition. A Global Functioning Assessment ("GAF")[4] score of 65 was recorded. AR 216. Dr. Michiel concluded Plaintiff is able to maintain attention and concentration and to carry out one or two step simple job instructions. The doctor

---

[4] A GAF score is a generalized description of the claimant's level of psychological symptoms. *See* DSM-IV at 32 (4th Ed. 2000) (DSM IV). A GAF score of 65 indicates: "Some mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." *Id*. The Commissioner has determined the GAF scale "does not have a direct correlation to the severity requirements in [the Social Security Administration's] mental disorders listings." 65 Fed.Reg. 50,746, 50,765 (Aug. 21, 2000).

believed Plaintiff could relate and interact appropriately with coworkers, supervisors and the general public, but should avoid carrying out an extensive variety of technical or complex instructions. Lastly, the doctor noted that Plaintiff is capable of handling his own funds. AR 216.

### *Psychiatric Review Technique*

Evangeline Murillo, M.D., performed a psychiatric review on August 1, 2005. Dr. Murillo assessed affective and anxiety-related disorders. AR 278. Plaintiff was mildly limited in the restriction of activities of daily living, maintaining social functioning, and maintaining concentration, persistence and pace. AR 288. Moderate limitations were noted regarding the ability to understand and remember, and carry out, detailed instructions. AR 292. No limitations regarding social interaction or adaptation were identified and no evidence revealed episodes of decompensation of an extended duration or other "C" criteria. The doctor specifically noted improvement due to treatment and medication. AR 289, 293.

### *Functional Capacity Assessment*

On April 13, 2005, James V. Glaser, M.D., found Plaintiff was capable of lifting and carrying fifty pounds occasionally and twenty-five pounds frequently. He could stand and walk six hours in an eight-hour work day and sit for the same period. Plaintiff was not limited regarding pushing or pulling, could frequently climb, balance, kneel, crouch and crawl, and occasionally stoop. AR 297-298. No manipulative, visual, communicative or environmental limitations were identified. AR 299-300. Dr. Glaser noted the "severity or duration" of Plaintiff's symptoms was disproportionate to the expectation for the alleged impairments. AR 301. Finally, Dr. Glaser's conclusions were reviewed and affirmed by Lavanya Bobba, M.D., on December 8, 2005. AR 303.

### **ALJ's Findings**

The ALJ determined that Plaintiff had not engaged in substantial gainful activity since January 25, 2005, and had the severe impairments of degenerative disc disease, depression, and posttraumatic stress disorder. AR 20. Nonetheless, the ALJ determined that none of the severe impairments met or exceeded one of the listing impairments. AR 20-21.

Based on his review of the medical evidence, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform a significant number of jobs. He could lift and carry fifty pounds occasionally and twenty-five pounds frequently, could stand, walk and sit for six hours in an eight-hour workday, and could perform simple work with one or two-step directions. AR 21.

Plaintiff has no past relevant work. Nevertheless, the ALJ found that Plaintiff had the RFC to perform jobs that exist in significant numbers in the national economy. AR 24-25.

## **SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## **REVIEW**

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of

such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994). Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of his disability; (2) has an impairment or a combination of impairments that is considered "severe" based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) has no past relevant work; yet (5) retained the RFC to perform a significant number of jobs in the national economy. AR 20-26.

Here, Plaintiff argues that the ALJ erred in failing to find he was limited to occasional stooping. Moreover, Plaintiff contends the ALJ erred in his step five analysis. (Doc. 14 at 6-9.)

## DISCUSSION

**A.** ***Postural Limitations Regarding Stooping***

Plaintiff contends that the ALJ erred by failing to offer clear and convincing reasons for his rejection of the "uncontroverted limitation assessed by both Dr. Hassan and the state agency physician" that Plaintiff was limited to occasionally stooping. Because an individual limited to occasional stooping cannot perform the full range of medium work, Plaintiff asserts the matter must be remanded to allow the ALJ to proffer a complete hypothetical. (Doc. 14 at 6-7.)

The Commissioner responds to Plaintiff's argument by indicating that even were this Court to accept Plaintiff's assertion, any error was harmless because two of the three jobs testified about by the VE do not involve any stooping. Additionally, the Commissioner asserts that even had Plaintiff been determined to be capable of only unskilled light work, the full range of light work requires only the ability to stoop occasionally. Thus, contends the Commissioner,

Plaintiff remains not disabled because he can perform "the full range of light work according to the Grid." (Doc. 19 at 4-5.)

With regard to Dr. Hassan, the ALJ specifically stated:

> The consulting internist, Dr. Hassan, examined the claimant in February, 2005, and noted no tenderness to palpitation in the midline or paraspinal areas, and negative straight leg raising. There were no motor or sensory deficits, and gait was within normal limits. From a functional standpoint, Dr. Hassan opined that the claimant could perform up to medium exertional activity. He could stand, walk or sit 6 hours of an 8-hour workday with normal breaks, and does not require an assistive device for walking. He could occasionally climb, balance, stoop, kneel, crouch and crawl.

AR 22, internal citation omitted. Later, the ALJ's findings include the following:

> As for the opinion evidence, the Disability Determination Services (DDS) consultants evaluated the evidence of record and determined that the claimant had the exertional capacity for medium level work which is afforded great weight. It was further determined in December, 2005, that claimant was limited to simple repetitive tasks which is afforded substantial weight.
> The opinion of Dr. Has[s]an is given significant weight as it is consistent with the minimal objective findings. . . .

AR 24, internal citations omitted.

An ALJ need not necessarily agree with everything contained in a medical opinion and can consider some portions less significant than others when evaluated against the other evidence in the record. *Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir. 1987). Morever, an ALJ is only required to present the VE with those limitations he finds to be credible and supported by the evidence. *Osenbrock v. Apfel*, 240 F.3d 1157, 1165-66 (9th Cir. 2001). Here, ALJ Webster afforded the opinions at issue either "great," "substantial" or "significant" weight on the whole because the opinions were "consistent with the minimal objective findings." This Court finds that while the ALJ did not expressly address the postural limitation regarding occasional stooping, he was not required to present VE Dachelet with a limitation he found not supported the record or credible. *Osenbrock*, at 1165-66. This record is significantly lacking in objective medical findings; it contains no objective medical evidence to support the postural limitation of occasional stooping. Plaintiff did testify that he could not bend over (AR 62), yet the ALJ found Plaintiff's credibility to be "poor." In his credibility findings, the ALJ noted Plaintiff's "obvious gross exaggeration" regarding his back pain, the normal clinical findings, including x-rays and

12

examination results, and Plaintiff's "dismal work history." AR 24. This Court finds the ALJ's hypothetical, which did not involve a postural limitation of occasional stooping, is supported by substantial evidence.

Moreover, harmless error does apply in the Social Security context. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("A decision of the ALJ will not be reversed for errors that are harmless" [citing *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir.1990)]).

The Ninth Circuit has cautioned, "[w]e are constrained to review the reasons the ALJ asserts." *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir.2003); *Stout v. Commissioner, Social Sec. Admin*, 454 F.3d 1050, 1056 (9th Cir. 2006) ("we hold that where the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination").

The Ninth Circuit cautioned in *Stout* that it could not

> "affirm the decision of an agency on a ground that the agency did not invoke in making its decision." *Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir.2001) (*citing SEC v. Chenery Corp.*, 332 U.S. 194, 196, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947)). Consequently, if the Commissioner's request that we dismiss the ALJ's error as harmless "invites this Court to affirm the denial of benefits on a ground not invoked by the Commissioner in denying the benefits originally, then we must decline." *Id*. at 847-48.

*Stout v. Commissioner, Social Sec. Admin*, 454 F.3d at 1054. Here, we are not asked to affirm the denial of benefits on a ground not invoked by the Commissioner. The medical record here is significantly lacking in objective medical evidence that would support the postural limitation complained of. The ALJ specifically referenced the "minimal objective findings" available.

As noted by the Commissioner, Plaintiff is capable of performing the full range of light work. The definition of light work used by the Social Security disability system involves:

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b). SSR 83-10 provides that for the majority of light work jobs the lifting requirement entails occasional stooping. "Occasionally" is defined as "occurring from very little up to one-third of the time." *Id*. SSR 83-14 further provides that, "to perform substantially all of the exertional requirements of most sedentary and light jobs, a person would not need to crouch and would need to stoop only occasionally . . .." Before being asked to provide specific jobs in the medium category following the ALJ's hypothetical, the VE indicated that the hypothetical worker of Plaintiff's age, education and work history, et cetera, could perform sedentary, light, and medium work in the regional or national economy. AR 68. Even assuming arguendo a postural limitation of occasional stooping should have been included in the hypothetical posed to the VE, any error is harmless because the world of work in the sedentary and light categories remains available. An error which has no effect on the ultimate decision is harmless. *Curry v. Sullivan*, 925 F.2d 1127 (9th Cir. 1990).

The hypothetical posed to the VE accurately reflected Plaintiff's limitations, and therefore substantial evidence supports the ALJ's finding in this regard. Even had error occurred, it was harmless.

**B.** *Step Five Analysis*

Next, Plaintiff complains the VE's testimony is inconsistent with the Dictionary of Occupational Titles ("DOT"), and therefore, the ALJ erred by failing to provide a reason for deviation from the DOT. More particularly, Plaintiff argues that by limiting him to "simple 1 and 2 step directions," he could perform only jobs with a reasoning of level one. However, the jobs identified by the VE required a reasoning of level two or greater. (Doc. 14 at 7-10.)

Defendant contends there is no conflict between the VE's testimony and the DOT, rather, the conflict was generated by Plaintiff. As a result, the ALJ did not err and remand is not required. (Doc. 19 at 5-6.)

In response to the Commissioner's position, Plaintiff contends the authority cited by Defendant is inapposite. Plaintiff asserts that this Court does not have sufficient information regarding "Reasoning level 1 jobs that only require occasional stooping" and thus remand is required. (Doc. 20 at 3-4.)

SSR 00-4p states that generally, occupational evidence provided by a VE should be consistent with the occupational information supplied by the DOT. Where there is an apparent conflict, the ALJ must elicit a reasonable explanation for the conflict before relying on the VE to support a determination or decision about whether the claimant is disabled. *See* SSR 00-4p. The ALJ may rely on the testimony of a VE over that of the DOT by determining that the explanation given by the VE is reasonable and provides a basis for doing so. *Id.*

Although evidence provided by a VE "generally should be consistent" with the DOT, "[n]either the [ Dictionary of Occupational Titles ] nor the [vocational expert] . . . evidence automatically 'trumps' when there is a conflict." *Massachi v. Astrue,* 486 F.3d 1149, 1153 (9th Cir. 2007) (citing SSR 00-4p). Thus, the ALJ must first determine whether a conflict exists. If it does, the ALJ must then determine whether the VE's explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the DOT. *Id.* Where the ALJ fails to ask the VE is the positions are consistent with the DOT, the Court is unable to determine whether substantial evidence supports the ALJ's finding at step five. *Id.*

Here, the ALJ specifically asked the VE whether his testimony regarding available positions was consistent with the DOT. VE Dachelet replied that it was. AR 70; *see also* AR 25 ("Pursuant to SSR 00-4p, the vocational expert's testimony is consistent with the information contained in the *Dictionary of Occupational Titles*").

The VE identified three medium, unskilled positions in response to the ALJ's first hypothetical: packer (DOT 920.587-134),[5] line service attendant (DOT 912-687-070) and cleaner (DOT 911.687-014). AR 25, 68-70. Plaintiff complains "simple 1 and 2 step directions" limit him to those with a reasoning level of one, but not greater than one. Because the hand packager, line service attendant and cleaner positions all have a reasoning level greater than one, Plaintiff contends the ALJ erred and remand is required. (Doc. 14 at 8-10.) However, as pointed out by

---

[5] The parties agree the correct DOT number for the job title of hand packager is 920.587-018. (*See* Doc. 14 at 9 & Doc. 19 at 4.)

15

the Commissioner, courts within the Ninth Circuit have consistently held that a limitation regarding simple or routine instructions encompasses a reasoning level of one *and* two.[6]

In *Meissl v. Barnhart*, 403 F.Supp.2d 981, 983-985 (C.D. Cal. 2005), the Central District of California held that a limitation to simple and repetitive tasks was consistent with level two reasoning positions as provided for in the DOT. In that case, the claimant was limited to 'simple tasks performed at a routine or repetitive pace." *Id.*, at 982. The court explained that while the Social Security regulations provided only two categories of abilities with regard to understanding and remembering instructions - "short and simple" and "detailed" or "complex" - the DOT has six gradations for measuring that ability. *Id.*, at 984. The *Meissl* court held that to

> equate the Social Security regulations use of the term "simple" with its use in the DOT would necessarily mean that all jobs with a reasoning level of two or higher are encapsulated within the regulations' use of the word "detail." Such a "blunderbuss" approach is not in keeping with the finely calibrated nature in which the DOT measures a job's simplicity.

*Meissl v. Barnhart*, 403 F.Supp.2d at 984. The use of the term "uninvolved" and "detailed" in the DOT qualifies the term and refutes any attempt to equate the SSR use of the term "detailed" with its use in the DOT. *Id.* The court found a claimant's RFC must be compared with the DOT's reasoning scale. Level one reasoning requires slightly less than simple tasks that are in some way repetitive. An example of a level one reasoning job would include the job of counting cows as they come off a truck. The court in *Meissl* determined that a limitation to simple repetitive tasks is not inconsistent with positions requiring level two reasoning. *Id.*

Here, the reasoning levels for two of the three jobs identified by the VE - hand packager and cleaner - both involve level two reasoning and are not in conflict with the ALJ's limitation to simple one and two step directions. *Meissl v. Barnhart*, 403 F.Supp.2d at 984. The line service attendant position involves a reasoning level of three,[7] and thus falls outside the limitation

---

[6] Reasoning at level two involves applying "common sense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations."

[7] Reasoning at level three involves applying "common sense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations."

16

imposed. Nevertheless, the positions of hand packager and cleaner combined provide a regional job total of 41,571 and a national job total of 828,020. These numbers constitute a significant number of available jobs. *Barker v. Secretary of Health & Human Servs.*, 882 F.2d 1474, 1478 (9th Cir. 1989) (finding that 1266 jobs in the Los Angeles/Orange County are were considered significant); *see also Moncada v. Chater,* 60 F.3d 521, 524 (9th Cir. 1995); *Martinez v. Heckler,* 807 F.2d 771, 775 (9th Cir. 1986). Plainly, remand is unnecessary.

In sum, the ALJ's findings are supported by substantial evidence and are free of legal error.

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security and against Plaintiff, Blia Lee.

IT IS SO ORDERED.

Dated: **February 19, 2010**    **/s/ Gary S. Austin**
UNITED STATES MAGISTRATE JUDGE